UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MAINE

| | |
|---|---|
| CHRISTOPHER HAMEL,<br><br>Plaintiff,<br><br>v.<br><br>MASELLO SALON SERIVICES OF NEW ENGLAND, LLC<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

NOW COMES Plaintiff, Christopher Hamel, and hereby complains against Masello Salon Services of New England, LLC as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Christopher Hamel ("Mr. Hamel") brings this action against Defendant Masello Salon Services of NE, LLC ("Masello") for disability discrimination, disability-based harassment, and retaliation in violation of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. §§ 12101 to 12213 (the "ADA"), and the Maine Human Rights Act, 5 M.R.S.A. §§ 4551 to 4634 (the "MHRA"), and for retaliation in violation of the Maine Whistleblowers' Protection Act, 26 M.R.S.A. §§ 831 to 840 (the "WPA"), which is enforced through the MHRA.

2. Masello employed Mr. Hamel as a field sales consultant for more than nine years, during which he was consistently one of its top-producing sales consultants. After Mr. Hamel

disclosed that he had been diagnosed with post-traumatic stress disorder, his supervisor used that condition to harass and belittle him.

3. When Mr. Hamel reported the harassment to Masello's ownership and human resources department, complained that he did not feel safe at work, and asked to be reassigned to a different supervisor, Masello fired him days later on the pretext of "insubordination." As a result, Mr. Hamel has suffered significant damages.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over Mr. Hamel's ADA claims pursuant to 28 U.S.C. § 1331, because those claims arise under the laws of the United States, and pursuant to 42 U.S.C. § 12117.

5. This Court has supplemental jurisdiction over Mr. Hamel's related claims arising under the Maine Human Rights Act and the Maine Whistleblowers' Protection Act pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Mr. Hamel's claims occurred in this district. Mr. Hamel's sales territory encompassed the entire State of Maine, he performed his work in Maine, and the unlawful conduct alleged in this Complaint occurred in and affected his employment in Maine.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

7. On or about July 15, 2025, Mr. Hamel filed a complaint with the Maine Human Rights Commission (the "MHRC") and the United States Equal Employment Opportunity Commission (the "EEOC").

8. On June 1, 2026, the MHRC issued Mr. Hamel a Notice of Right to Sue pursuant to 5 M.R.S. § 4612(6) and § 4622(1).

9. This Complaint is filed within 90 days of the issuance of the Notice of Right to Sue. Mr. Hamel has satisfied all conditions precedent and exhausted all administrative remedies required to bring this action.

**PARTIES**

10. Plaintiff Christopher Hamel is an individual who resides in Punta Gorda, Florida. At all relevant times, he resided in the State of Maine and was employed by Masello in the State of Maine and was an "employee" within the meaning of the ADA and the MHRA.

11. Defendant Masello Salon Services of New England, LLC, also known as Masello Salon Services, is a Maine limited liability company that supplies beauty products to salons on a wholesale basis and does business throughout the State of Maine. Masello's Principal Home Office Address is in Cranston, Rhode Island. At all relevant times, Masello employed more than 15 employees and was an "employer" within the meaning of the ADA and the MHRA.

**FACTUAL ALLEGATIONS**

12. Mr. Hamel began working for Masello on August 10, 2015, as a field sales consultant. His sales territory grew over time to encompass the entire State of Maine. His job frequently required him to travel to salons throughout Maine to sell beauty products.

13. Effective October 1, 2021, Masello set Mr. Hamel's compensation at 11% commission on his total monthly sales, an $800 weekly draw, and a $1,500 monthly travel allowance.

14. Throughout his employment, Mr. Hamel performed his job satisfactorily and was consistently one of Masello's top three or four producing sales consultants.

15. Mr. Hamel reported to Bob Nelson, a district sales manager who worked out of New Hampshire. Mr. Nelson reported to Michael Di Paolo, who was one of Masello's owners. At all relevant times, Mr. Nelson and Mr. Di Paolo acted within the scope of their authority as Masello's agents.

16. In or about May 2022, Mr. Hamel began outpatient therapy. After completing a clinical assessment, his counselor diagnosed him with post-traumatic stress disorder ("PTSD"). His symptoms included debilitating anxiety and hypervigilance.

17. Mr. Hamel's PTSD is a mental impairment that substantially limits one or more of his major life activities, including sleeping, concentrating, thinking, and interacting with others, and significantly impairs his mental health. Mr. Hamel is, and at all relevant times was, an individual with a disability within the meaning of the ADA and the MHRA, and a qualified individual who could perform the essential functions of his position.

18. In or about April 2023, Mr. Hamel asked his counselor to prepare a letter he could give to Masello explaining that he had been diagnosed with PTSD, that he was in treatment, and that he was making progress.

19. Mr. Hamel gave the counselor's letter to Mr. Nelson, thereby informing Masello of his disability.

20. After Mr. Hamel disclosed his PTSD, Mr. Nelson's treatment of him deteriorated. Mr. Nelson used Mr. Hamel's condition and the information in the counselor's letter against him.

21. Mr. Nelson frequently called Mr. Hamel names such as "stupid" and "crazy," implied that he was unbalanced, and, when the two disagreed about work, would ask whether Mr. Hamel was still in treatment. These interactions triggered Mr. Hamel's PTSD.

22. Mr. Nelson also lied about and underreported Mr. Hamel's sales figures. Because Mr. Hamel had access to the actual figures, he caught and corrected the misstatements, which Mr. Nelson resented. When confronted, Mr. Nelson would deny having made statements he had in fact made, further harassing Mr. Hamel.

23. In or about July or August 2024, Masello hired a new salesperson, and Mr. Nelson instructed that salesperson to visit salons in Mr. Hamel's territory without Mr. Hamel's knowledge. Mr. Hamel learned of this when confused salon clients contacted him, undermining relationships he had built over nearly a decade.

24. By September 2024, Mr. Nelson's conduct had become unbearable, but Mr. Hamel valued his work and did not want to lose his job. On September 20, 2024, he telephoned owner Mike Di Paolo, described what was happening, and—knowing that other sales consultants had

been reassigned to different supervisors—asked whether he too could be reassigned. Mr. Di Paolo said he would look into it.

25. Later that day, at Mr. Di Paolo's direction, Masello's human resources administrator telephoned Mr. Hamel. Mr. Hamel described Mr. Nelson's conduct, reported that Mr. Nelson was harassing him, lying to him, and harassing him in connection with his PTSD, stated that he did not feel safe or comfortable around Mr. Nelson, and asked to be reassigned to a new manager.

26. During that call, the human resources administrator acknowledged that she had been unaware that Mr. Hamel had PTSD and had no knowledge that he had provided Mr. Nelson with a letter from his counselor, because Mr. Nelson had never shared the letter with human resources. The human resources administrator requested a copy of the letter, which Mr. Hamel provided, and said she would investigate and be in touch.

27. Approximately three days later, on September 23, 2024, the human resources administrator and Mr. Di Paolo telephoned Mr. Hamel and terminated his employment.

28. Masello told Mr. Hamel that he was being fired for insubordination for blocking Mr. Nelson's calls. Mr. Hamel had never blocked Mr. Nelson's calls. He had only stated that Mr. Nelson's persistent harassment related to his PTSD had caused him to think about doing so for his own well-being.

29. Masello's stated reason for the termination is false and pretextual.

30. Mr. Nelson's harassment was severe and pervasive, altered the terms and conditions of Mr. Hamel's employment, and at times reduced him to tears. As a direct and

proximate result of Masello's unlawful conduct, Mr. Hamel has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, and other damages.

**COUNT I**

**Disability Discrimination in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112**

31. Mr. Hamel repeats and realleges each and every allegation contained in paragraphs 1 - 30 of this complaint as if fully set forth herein.

32. At all relevant times, Mr. Hamel was an individual with a disability within the meaning of 42 U.S.C. § 12102 and a qualified individual who, with or without reasonable accommodation, could perform the essential functions of his position, within the meaning of 42 U.S.C. § 12111(8).

33. Masello knew of Mr. Hamel's disability.

34. Masello discriminated against Mr. Hamel on the basis of his disability, in violation of 42 U.S.C. § 12112(a), by subjecting him to disparate and hostile treatment because of his disability and by discharging him because of his disability.

35. Masello's proffered reason for terminating Mr. Hamel—purported insubordination—is a pretext for disability discrimination, as demonstrated by, among other things, the inconsistencies in Masello's stated rationale.

36. As a direct and proximate result of Masello's unlawful discrimination, Mr. Hamel has suffered damages, including past and future lost wages and benefits, emotional distress, and the costs of bringing this action.

37. Masello engaged in the foregoing conduct with malice or with reckless indifference to Mr. Hamel's federally protected rights and is therefore liable for punitive damages.

**COUNT II**

**Hostile Work Environment in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112**

38. Mr. Hamel repeats and realleges each and every allegation contained in paragraphs 1 - 37 of this complaint as if fully set forth herein.

39. Because of Mr. Hamel's disability, Mr. Nelson subjected him to harassment—including repeated name-calling, references to his condition and treatment, and belittling conduct—that was sufficiently severe or pervasive to alter the terms and conditions of his employment and to create an abusive working environment.

40. The harassment was both objectively and subjectively offensive: a reasonable person in Mr. Hamel's position would have found the environment hostile or abusive, and Mr. Hamel in fact perceived it to be so.

41. The harassment is attributable to Masello because it was carried out by Mr. Hamel's supervisor and because Masello, after being notified of the harassment through its

ownership and human resources department, failed to take prompt and effective remedial action and instead terminated Mr. Hamel.

42. As a direct and proximate result of the hostile work environment, Mr. Hamel has suffered damages, including emotional distress, lost wages and benefits, and the costs of bringing this action, and Masello is liable for punitive damages for acting with malice or reckless indifference to Mr. Hamel's federally protected rights.

**COUNT III**

**Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12203**

43. Mr. Hamel repeats and realleges each and every allegation contained in paragraphs 1 - 42 of this complaint as if fully set forth herein.

44. Mr. Hamel engaged in activity protected by the ADA when he opposed Mr. Nelson's disability-based harassment and requested a reasonable accommodation in the form of reassignment to a different supervisor, by reporting the harassment to Masello's owner and human resources administrator on September 20, 2024.

45. Masello took a materially adverse employment action against Mr. Hamel when it terminated his employment on September 23, 2024.

46. There is a causal connection between Mr. Hamel's protected activity and his termination. Masello fired Mr. Hamel within days of his complaints of disability-based harassment and his request for reassignment, and but for that protected activity Masello would not have terminated him.

47. Masello's proffered reason for the termination is a pretext for retaliation.

48. As a direct and proximate result of Masello's unlawful retaliation, Mr. Hamel has suffered damages, including past and future lost wages and benefits, emotional distress, and the costs of bringing this action.

**COUNT IV**

**Disability Discrimination and Hostile Work Environment in Violation of the Maine Human Rights Act, 5 M.R.S. § 4572**

49. Mr. Hamel repeats and realleges each and every allegation contained in paragraphs 1 - 48 as of this complaint if fully set forth herein.

50. At all relevant times, Mr. Hamel had a physical or mental disability within the meaning of 5 M.R.S. § 4553-A and was a qualified individual with a disability.

51. Masello discriminated against Mr. Hamel because of his disability, in violation of 5 M.R.S. § 4572(2), by subjecting him to a hostile work environment because of his disability and by discharging him because of his disability. Masello's stated reason for the discharge is pretextual.

52. As a direct and proximate result of Masello's unlawful discrimination, Mr. Hamel has suffered damages, and is entitled to all remedies available under 5 M.R.S. § 4613, including back pay, compensatory and punitive damages, and civil penal damages.

**COUNT V**

**Retaliation in Violation of the Maine Human Rights Act, 5 M.R.S. § 4572**

53. Mr. Hamel repeats and realleges each and every allegation contained in paragraphs 1 - 52 of this complaint as if fully set forth herein.

54. Mr. Hamel engaged in protected activity when he opposed Mr. Nelson's disability-based harassment and requested reassignment as an accommodation for his disability.

55. Masello retaliated against Mr. Hamel because of his protected activity by terminating his employment days later, in violation of the Maine Human Rights Act. Masello's stated reason for the discharge is pretextual.

56. As a direct and proximate result of Masello's unlawful retaliation, Mr. Hamel has suffered damages and is entitled to all remedies available under 5 M.R.S. § 4613.

**COUNT VI**

**Retaliation in Violation of the Maine Whistleblowers' Protection Act, 26 M.R.S. §§ 831–840, Enforced Through the Maine Human Rights Act, 5 M.R.S. § 4572(1)(A)**

57. Mr. Hamel repeats and realleges each and every allegation contained in paragraphs 1 - 56 of this complaint as if fully set forth herein.

58. Mr. Hamel engaged in activity protected by the Maine Whistleblowers' Protection Act when, acting in good faith, he reported to Masello's owner and human resources administrator that he did not feel safe at work as a result of Mr. Nelson's harassment and abuse—a condition or practice that Mr. Hamel had reasonable cause to believe put his health or safety at risk, within the meaning of 26 M.R.S. § 833(1).

59. Mr. Hamel first brought the condition to the attention of persons having supervisory authority with Masello and allowed Masello a reasonable opportunity to address it, as contemplated by 26 M.R.S. § 833(2).

60. Masello imposed an adverse employment action on Mr. Hamel by terminating his employment on September 23, 2024, within days of his protected report.

61. Mr. Hamel's protected activity was a substantial factor motivating Masello's decision to terminate him. Masello's stated reason for the discharge is pretextual, as shown by the Maine Department of Labor's finding that Masello failed to prove any misconduct.

62. Masello's violation of the Whistleblowers' Protection Act is actionable through the Maine Human Rights Act pursuant to 5 M.R.S. § 4572(1)(A). As a direct and proximate result of Masello's unlawful retaliation, Mr. Hamel has suffered damages and is entitled to all remedies available under 5 M.R.S. § 4613.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Christopher Hamel respectfully requests that this Court enter judgment in his favor and against Defendant and grant the following relief:

1. Award Mr. Hamel back pay and lost benefits, plus prejudgment and postjudgment interest;
2. Order Defendant to reinstate Mr. Hamel to a comparable position or, in lieu of reinstatement, award him front pay and benefits;
3. Award Mr. Hamel compensatory damages, including for emotional distress and other nonpecuniary losses;
4. Award Mr. Hamel punitive damages under the ADA, and civil penal, compensatory, and punitive damages under the Maine Human Rights Act;
5. Enter injunctive and equitable relief, including an order prohibiting Defendant from engaging in further discrimination and retaliation and requiring appropriate training and policy reforms;
6. Award Mr. Hamel reasonable attorney's fees, expert fees, and costs incurred in connection with this action; and
7. Grant Mr. Hamel such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triabl

Dated: August 28, 2026

*/s/ Sally Morris*______________________
Sally A. Morris, Bar No. 8479
Sally A. Morris, Attorney at Law, LLC
Auburn Hall, Suite 212
60 Pineland Drive
New Gloucester, ME 04260
(207) 558-6161
smorris@morrisemploymentlaw.com

Attorney for Plaintiff Christopher Hamel